George McGEE, Plaintiff,
v.
A. L. NUCKOLS, Defendant.
Civ. No. 2735.

United States District Court
E. D. Arkansas, W. D.
Dec. 9, 1955.

Daggett & Daggett, Marianna, Ark., for plaintiff.

Reinberger & Eilbott, Pine Bluff, Ark., Gerland P. Patten, Little Rock, Ark., for defendant.

TRIMBLE, Chief Judge.

This suit for unlawful detainer was filed in this court by the plaintiff January 5, 1954. The complaint alleged that the plaintiff was the owner of the five contiguous tracts of land described in the complaint in Sections 7, 17 and 18 in Township 7 South, Range 4 West, Jefferson County, Arkansas, and that the defendant was unlawfully detaining said land as tenant of the plaintiff after termination of the right to occupy the land.

Defendant answered the complaint and denied that the plaintiff is entitled to the possession of any property of which the defendant is in possession or any lands described in the complaint or any accretion thereto. The defendant, for first defense, states that he is not in possession of any lands described in the complaint or any lands owned by the plaintiff and as a second defense defendant stated that he is in possession of certain lands in Sections 33 and 34, Township 7 South, Range 4 West, Jefferson County, Arkansas, but that said lands do not belong to the plaintiff. (The use of the term Jefferson County may be a typographical error. The defendant has a deed from the Arkansas State Land Commissioner to these lands, in Lincoln County.)

At the trial of the case before the court both parties testified and a number of witnesses testified orally for each of the parties. Both plaintiff and defendant introduced records and plats pertaining to the tract of land in controversy. As to the material facts, there is little dispute and the court has had no difficulty in arriving at a decision.

The relationship of landlord and tenant is established by oral testimony regarding such relationship, together with a writing signed by the parties dated November 10, 1948, which reads as follows:

"I hereby grant you grazing privileges on land I own on Diamond Point, Jefferson County, Arkansas, also fishing rights in water adjacent thereto, until further notice, subject to provision that you look after my interests there.",

and two communications that passed between the parties, one dated June 1, 1953, in which the plaintiff notified the defendant as follows:

"This is to notify you to get your live stock or other possessions off Diamond Point on or before June 15, 1953. Said land being known as Diamond Point bounded on the West, South and East by the old channel of the Arkansas River and on the North by the present Arkansas River and all being in Jefferson County, Arkansas."

The other was a letter dated June 9, 1953, written by Mr. M. L. Reinberger, an attorney, in answer to the foregoing notice, (this letter being written to the plaintiff for the defendant) in which it is stated:

"Mr. A. L. Nuckols, of Gould, Arkansas has been up to see us with reference to the grazing privileges which he has had on your land and advises us that you now desire possession of the land, and also advises us that he has just finished fencing the land with the understanding that he could remain there the balance of this year.

"Mr. Nuckols is only too anxious to surrender your lands to you but with the understanding he has with you he does not think that he should be compelled at the present time to surrender, and I would like to go over the matter with you so that Mr. Nuckols could comply with his agreement."

The relationship of landlord and tenant being established, and it being un-

disputed that such relationship was terminated, the only other question before the court is the location and extent of the land involved.

■ Since this is an unlawful detainer suit brought by the plaintiff, he is not required to deraign title. The action was brought, and is being maintained, under the provisions of §§ 34–1503, 1506, 1507, 1508, 1509 and 1510, Ark.Stats.1947.

Title to the land is not involved in the action. As was stated by the Arkansas Supreme Court in the case of Prioleau v. Williams, 104 Ark. 322, 149 S.W. 101:

"This is an action of unlawful detainer instituted in the circuit court, and is a possessory action only. It is an action to recover the immediate possession of the land, and not to determine the title thereto. 'In such an action the title to the premises in question shall not be adjudicated upon or given in evidence except to show the right of possession and the extent thereof.' Kirby's Digest, § 3648. The right of action is based upon a contract, either express or implied, whereby the relation of landlord and tenant arises and exists between the parties. Fowler v. Knight, 10 Ark. 43; McGuire v. Cook, 13 Ark. 448; Bradley v. Hume, 18 Ark. 284; Dortch v. Robinson, 31 Ark. [296] 298; Necklace v. West, 33 Ark. 682; Walker v. McGill, 40 Ark. 38; Anderson v. Mills, 40 Ark. 192. See, also, Logan v. Lee, 53 Ark. 94, 13 S.W. 422; James v. Miles, 54 Ark. 460, 16 S.W. 195.

"The issue, therefore, which was involved in this suit, was whether or not the defendant was a tenant of the plaintiff either by contract expressly made or arising by implication."

■ The relationship of landlord and tenant was established between the parties to this suit on November 10, 1948, when they signed the paper made Exhibit "A" to the complaint and hereinabove set out in full.

■ The land leased is, of course, very loosely described as "the land I (George McGee) own on Diamond Point", and if this written agreement were the only thing before the court to show what the leased lands were, it would not be possible to make a determination with reference thereto.

There is, however, additional undisputed testimony before the court that does establish the description of the property leased.

On June 1, 1953, plaintiff wrote to the defendant and notified him that the lease was being terminated and set out the description of Diamond Point, mentioned in the lease. Diamond Point, the land leased, according to this letter, is the "land being known as Diamond Point bounded on the West, South and East by the old channel of the Arkansas River and on the North by the present Arkansas River and all being in Jefferson County, Arkansas". The defendant did not question the correctness of this description, but, through an attorney, he asked for further privileges with reference to "your land", "the land" and "your lands". The Reinberger letter advises that Nuckols had just finished fencing the land with the understanding that he could remain there the balance of the year, and Mr. Reinberger, speaking for Mr. Nuckols, stated that Nuckols "is only too anxious to surrender your lands to you, but with the understanding that he has with you he does not think he should be compelled at the present time to surrender."

There can be no doubt that Mr. Nuckols knew that the land he was requested to vacate was all of Diamond Point as described in the notice. He did not then contend that the McGee lease covered only the North part of Diamond Point.

It is interesting to note that a few days after this letter was written the defendant procured his tax deed to portions of Sections 33 and 34, Township

7, Range 4 West in Lincoln County, Arkansas. He said that when the Reinberger letter was written he was in the process of getting the tax deed.

Though the defendant claimed that he had some sort of permission from a Mr. Butcher, a tenant of the South Bend Plantation, (a man, so far as the record shows, wholly without authority to transfer his grazing rights) he sought to bolster his claim by obtaining the deed from the State Land Commissioner. (The land was forfeited to the state for nonpayment of taxes in the years 1911 and 1923.) Defendant says he made inquiry as to the ownership of the lands north of him, and after being informed relative thereto, he visited the plaintiff and discussed the matter with him, as a result of which the short written lease was executed.

If there had been any doubt in the mind of the defendant as to the actual owner of the land that he sought to rightfully hold for the purpose of grazing his cattle, this doubt could have been removed by a proper examination of the records of Jefferson County.

The deed to the lands involved herein was filed for record on January 18, 1943. It was recorded in Deed Book 169, page 94. The land was described as being in Sections 7, 17 and 18 in Township 7 South, Range 4 West. The tax books also would have shown him that McGee and those under whom he claims title had regularly paid the taxes on this land and all accretions in said Sections 7, 17 and 18 from the year 1938.

It is established from the plats and the oral testimony that the accretions in said Sections 17 and 18, which have been enlarged from year to year by the gradual southward creeping of the Arkansas River, constituted what was known as "Diamond Point". It is shown that the area now lying between the present position of the Arkansas River and its old channel at the time of the 1943 avulsion constituted the acreage of Diamond Point.

The defendant claims that he obtained permission to pasture some lands which he vaguely described as lands being adjacent to the north portion of Diamond Point. He could not have rightfully secured this permission from any one except the plaintiff, and he no doubt realized this when he sought to obtain permission from the plaintiff to graze upon the land owned by the plaintiff on Diamond Point and to have fishing rights in waters touched by this land. As a matter of fact, since the record before the court establishes that in 1948 McGee owned all of the land on Diamond Point, the use of that phrase "the land I own" was not at all an improper one to describe the extent of such ownership. Snyder v. Bridewell, 167 Ark. 8, 267 S.W. 561.

The lands described in plaintiff's deeds from G. C. Howe, Trustee, and from the Howe Lumber Company as parts of Sections 17 and 18 have had varied and irregular relationship with the main body of the stream of the Arkansas River since the original survey of the United States Engineers. The plat made in 1934 shows that all of the lands described in said Sections were north of the Arkansas River and that the accretions to the lands in 17 and 18 extended more than a mile southward from what would have been the South Boundary of those Sections. This plat indicates that the wanderings of the stream have been continuous and ravaging since 1819 when it extended through the SE¼ of Section 18 and then in a Northeasterly direction through the SW ¼ of Section 17 and about one-eighth mile into the SE¼ of Section 17 and then Southeasterly to the East boundary line of Section 17. Another plat shows that in 1883 the river cut partly across the North halves of Sections 17 and 18 and that its southern extension in the year 1883 was a mile or more East of the southern extension at the time the 1934 plat was made.

The evidence tends definitely to establish the southernmost extent of the Arkansas River at the time of the avulsion of 1943. The plat filed July 18, 1949, and recorded in Plat Book 4, Page 164,

indicates that the total area of the main-land and accretions in Sections 17 and 18, South of the present river, amounts to 889 acres.

Witness Harris, County Surveyor of Lincoln County, testified that all of Sections 33 and 34 on Diamond Point, formerly in Lincoln County, have been eaten away by the process of accretion. This being true, no portion thereof was included in the South Bend Plantation in 1943.

I, therefore, find that the defendant entered into the possession of the lands described in the complaint on or about November 10, 1948, under the provisions of the agreement marked Exhibit "A" to the complaint; that said agreement has been terminated; that the defendant has been in the unlawful possession of the lands involved herein since December 1, 1953; and that the plaintiff is entitled to recover damages for unlawful detention thereof in the amount of $500 per annum from December 1, 1953, against the defendant A. L. Nuckols and Hartford Accident and Indemnity Company, the surety on the retention bond.