**Albert MATTHEWS, Geraldine Matthews, and A. L. Nuckols, Appellants,**

v.

**George McGEE and Chicago Mill and Lumber Company, Appellees.**

**No. 18145.**

United States Court of Appeals
Eighth Circuit.

April 12, 1966.

John Harris Jones, Pine Bluff, Ark., for appellants and filed brief with Osro Cobb, Little Rock, Ark.

W. H. Daggett, Marianna, Ark., for appellees and filed brief with Daggett & Daggett, Marianna, Ark.

Before VOGEL, Chief Judge, BLACK-MUN, Circuit Judge, and STEPHEN-SON, District Judge.

BLACKMUN, Circuit Judge.

George McGee instituted this diversity action to quiet title to certain lands, known as Diamond Point, troubled by the wanderings of the Arkansas River. The defendants counterclaimed and asked for similar relief in their favor; in addition, they seek treble damages, under Ark. Stat. § 50–105 (1947), for the value of timber cut and carried away. The case was tried to the court sitting without a jury. Judgment was entered quieting title in the plaintiff, perpetually restraining the defendants from interfering with the plaintiff's possession, and dismissing the damage claim. Judge Young's opinion is McGee v. Matthews, 241 F.Supp. 300 (E.D.Ark.1965).

The plaintiff and defendant Nuckols have been in controversy over these lands before. McGee v. Nuckols, 136 F.Supp. 948 (E.D.Ark.1955). In that unlawful detainer case Judge Trimble referred, p. 951, to the formation of Diamond Point by accretion.

The basic facts and the testimony are set forth in Judge Young's opinion and certainly need no restatement here. We note only that the river formed the original boundary between Jefferson County to the north and Lincoln County to the south, Ark. Acts 1871, No. 68; that originally the river was north of the area in question and hence the geographical location of the area was in Lincoln County; that the river moved southward and, just before 1943, bound Diamond Point on the west, south and east; and that in 1943 a cutoff occurred which returned the river to the north of Diamond Point and left the theretofore existing channel as an oxbow lake.

The plaintiff McGee deraigns title through a Jefferson County chain and has paid taxes in that county since 1938. He claims that Diamond Point is an accretion to other lands he owns in Jefferson County. The defendants deraign title through a Lincoln County chain of tax and other deeds. They claim that Diamond Point was not formed by accretion and that the river came south of the area by avulsion.

The obvious and sole issue is whether the migration of the Arkansas River south of Diamond Point was by accretion or by avulsion. Accretion would operate to change the county boundary and resulting ownership; avulsion would not. De Loney v. State, 88 Ark. 311, 115 S.W. 138, 141 (1908); Adkisson v. Starr, 222 Ark. 331, 260 S.W.2d 956, 957 (1953); Kimble v. Willey, 98 F.Supp. 730, 738 (E.D.Ark.1951), aff'd 204 F. 2d 238, 38 A.L.R.2d 814 (8 Cir. 1953); Banks v. Chicago Mill & Lumber Co., 92 F.Supp. 232 (E.D.Ark.1950); see Anderson-Tully Co. v. Chicago Mill & Lumber Co., 175 F.2d 735 (8 Cir. 1949).

Judge Young, citing Judge Lemley's helpful and analytical opinion in Ussery v. Anderson-Tully Co., 122 F.Supp. 115 (E.D.Ark.1954), specifically found, p. 305 of 241 F.Supp., that the Arkansas River migrated southward by the process of accretion to form Diamond Point. He also found and concluded that Diamond Point accreted to sections in Jefferson County; that thereby the accretions became Jefferson County lands; and that the defendants' tax deeds and other titles originating in Lincoln County were invalid and of no effect.

The points raised by the defendants on appeal assert error in the denial of their motion for a directed verdict and in the conclusion that Diamond Point is an accretion to the Jefferson County sections. The defendants describe their position as "Essentially * * * that the accretion opinion advanced by Mr. Smith [plaintiff's civil engineer and potamologist witness] and adopted by the trial court is contrary to the known physical facts".

The defendants also state, "The opinion of the District Court * * * presents a concise statement of the nature of the conflicting evidence". Judge Young himself observed, p. 305 of 241 F.Supp.,

"Obviously all of the testimony cannot be reconciled. Much of the testimony concerns old River surveys, opinions, speculation and surmise by witnesses of what may have occurred many years ago. Of all this testimony, the Court thinks that of Mr. Smith the most persuasive."

By Rule 52(a), Fed.R.Civ.P., findings of fact made by the court are not to be set aside unless clearly erroneous, that is, "only upon clear demonstration that they are without substantial evidentiary support or that they are induced by an erroneous view of the law." Cole v. Neaf, 334 F.2d 326, 329 (8 Cir. 1964).

The entire case pivots on the accretion finding. The defendants in their brief acknowledge this. They assert that the plaintiff's case rests on the theory of accretion to Sections 17 and 18, north of the river; that the plaintiff's Section 18 lands were never riparian and have no accretion rights; that there could be no accretion to Section 17 because the river washed into that section; that the Little Field, a part of Diamond Point, was cultivated in 1909–10 when it was south of the river in Lincoln County; that crop rows and other indicia of cultivation and habitation were still identifiable years later when the river was south of the field; and that, consequently, the Little Field remained in existence throughout and could not have been subjected to accretion. The defendants stress what they feel is the uniformity and consistency of the testimony of a number of witnesses, who had lived in the area a long time, as to the existence of the cultivated Little Field on Diamond Point in 1909–10, the enduring evidence of rows and even, as late as 1963, of a pump near what was believed to be the site of former habitations, and the observability of the old river bed to the northwest. The testimony of witnesses whom they regard as experts lends support to this approach.

The defense attacks the plaintiff's opposing expert opinion by saying that it is largely based on tree size, as presented by forester witness White, which could not be disputed because the land had been cut over in 1941–42; that the plaintiff's witness Smith had no information other than map data and there were no maps of the area between 1884 and 1917; that he made no soil borings; that witness Smith made gross errors as to accretions and section lines in his maps; that the maps deny Smith's interpretations; and that the Smith testimony just is not substantial evidence to support the verdict.

We are left with the impression that much of the defendants' argument here is primarily grist for the trier of fact and not for us as a reviewing court. A careful review of the printed record and of the briefs convinces us that this is a situation of truly conflicting evidence and not one, on the plaintiff's side, solely of opinion evidence which ignores and is inconsistent with proved physical facts. We feel that the Smith testimony is adequately based and ties in consistently with that of Mr. White, and that the old residents' testimony as to the Little Field is not entirely uncontradicted for witness Neal, in 1950 and later, saw no evidence of row crops, field, road or habitation, and there are aspects of the testimony of the old residents which indicate that the cultivated area where people lived may not have been on Diamond Point at all but southwest of that area. We note, too, for what it is worth, that Mr. Smith's general expertness on Arkansas River channel changes has been recognized in other opinions of the federal court in Arkansas, Banks v. Chicago Mill & Lumber Co., supra, pp. 236–237 of 92 F.Supp.; Kimble v. Willey, supra, p. 737 of 98 F.Supp., and that he testified that he was a witness whose findings were adopted by the master in State of Mississippi v. State of Louisiana, 350 U.S. 5, 76 S.Ct. 29, 100 L.Ed. 6 (1955).

■ Judge Young's opinion is comprehensive and accurate in its review of the evidence and of the applicable law. Nothing has been demonstrated here which calls for reversal. The case is affirmed on the basis of his opinion.